UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

PATRICIA NACHAND,                     )
                                      )
              Petitioner,             )        Civil Action No. 3:22-MC-005-CHB
                                      )
v.                                    )
                                      )        **MEMORANDUM OPINION**
ADT, LLC,                             )        **AND ORDER**
                                      )
              Respondent.             )

                    ***   ***   ***   ***

        This matter is before the Court on remand from the Sixth Circuit Court of Appeals. *See* [R.

36 (Opinion and Judgment)]; [R. 40 (Mandate)]. Regional Director Patricia N. Nachand for Region

9 of the National Labor Relations Board (hereinafter, "the Board") appealed this Court's October

31, 2022 Order [R. 15] granting in part and denying in part the Board's Petition for Preliminary

Injunction Under Section 10(j) of the National Labor Relations Act ("the Act") [R. 1].

        The Sixth Circuit affirmed in part and reversed in part, and on remand this Court is tasked

with reconsidering two issues: (1) whether it would be just and proper to grant the Regional

Director's request for Defendant ADT, LLC to rescind, at the Union's request, any or all unilateral

changes made to the terms and conditions of bargaining unit members' employment, and (2)

whether a cease-and-desist order should issue preventing ADT from engaging in the anti-union

practices that gave rise to the Board's Petition. *See* [R. 36, pp. 21–22].

        On the Court's order [R. 41], the parties briefed these discrete issues. [R. 42]; [R. 43]. For

the reasons that follow, the Court will grant both of the Board's requests for injunctive relief.

## I.     Background

Beginning on January 25, 1971, and until the expiration of their last collective bargaining agreement (CBA) on October 14, 2021, ADT had a bargaining relationship with the International Brotherhood of Electrical Workers, Local No. 369, AFL-CIO (hereinafter, "the Union"), which represented a group of employees (the "bargaining unit members") in ADT's Louisville and Lexington, Kentucky facilities. [R. 1-1, p. 3]; *see also* [R. 9, p. 3].

In September 2021, ADT and the Union began negotiating a new collective bargaining agreement. [R. 1-1, p. 4]; [R. 9, p. 4]. The parties exchanged proposals, but the Union would not agree to the terms of a new incentive plan ADT sought to implement because it gave ADT "unilateral control over employee wages." [R. 1-1, p. 4]. More specifically, during bargaining sessions on September 29, 2021, and September 30, 2021, ADT's Director of Labor Relations, James Nixdorf, proposed that ADT and the Union replace the established wage rate, known as Schedule A, with a new, performance-based pay plan. [R. 36 (Sixth Circuit Opinion and Judgment), pp. 2–3]. Although the performance-based plan promised higher wages, the Union opposed it because it introduced at-will employment, gave ADT more control over the rate of pay, and limited employee-grievance protections. *Id.* at 3.

ADT and the Union met again on October 12, 2021, to continue bargaining. *Id.* At that time, Union Representative Edward Devine offered a proposal that continued Schedule A with wage increases of $3 per hour but also permitted the introduction of performance-based programs "in addition to the wages in . . . Schedule A." *Id.* Nixdorf countered with a performance-based pay plan similar to his initial suggestion. *Id.* Devine responded with a proposal similar to the one he had made earlier in the day, but with more modest wage increases and with a clarification that any performance-based program beyond what was required by Schedule A was not "subject to the

grievance and arbitration provisions" of the CBA. *Id.* Nixdorf then emailed Devine: "Based upon your last submission, I see know [sic] reason to adjust my last offer. In fact, it confirms everything I already believed. Please consider this a resubmission of our last offer." *Id.* Half an hour later, Devine wrote to Nixdorf: "[W]e are still available to negotiate if you and your team are finished for the night we are available the rest of the week otherwise please sign and date the extension and provide a list of dates to finish negotiating." *Id.* Devine attached a proposed agreement that would extend the existing CBA through November 30, 2021. *Id.* ADT did not agree to the proposed extension, so the CBA expired as scheduled on October 14, 2021. *Id.*

ADT and the Union held another bargaining session on October 26, 2021. *Id.* at 4. Devine made a new wage proposal, which again maintained the Schedule A structure. *Id.* Nixdorf countered with a modified performance-based pay plan. *Id.* Devine countered again, remaining firm on the Schedule A structure. *Id.* Devine also offered to limit a new agreement to just one year, instead of the usual three, but ADT was not open to a one-year deal. *Id.* ADT did not counter, and negotiations concluded for the day without an agreement. *Id.* At that point, Marcus Rodriguez, an employee participating in the negotiations in his role as a Union steward, began receiving text messages from other employees stating that ADT had distributed the Union's recent wage proposal to them and expressing their frustration with what they considered to be weak demands by the Union. *Id.* at 4. Around the same time, in mid-October, a disaffection petition began circulating among bargaining-unit employees. *Id.* at 3.

When negotiations broke down, ADT bypassed the Union and distributed the proposed incentive plan to employees directly, which they understood to include improved pay, bonuses, and more vacation time. [R. 1-1, p. 5]; *see also* [R. 36 (Sixth Circuit Opinion and Judgment), p. 4]. Several managers provided employees with pamphlets detailing the performance-based pay

plan and informed them that, for the plan to be adopted, they would have to circulate some paperwork—the disaffection petition—among their coworkers. [R. 36 (Sixth Circuit Opinion and Judgment), p. 3]. One manager, Eric Sanders, informed his subordinate, Michael Covert, that there was an opportunity to "get a lot more benefits" if the employees ousted the Union. *Id.* at 4. Sanders "persistent[ly]" told Covert that the new plan was "super beneficial," encouraged him "to advertise it" to coworkers and provided him with a disaffection petition and instructions on how to "vote out the Union." *Id.* Sanders continued to discuss the matter with Covert almost every other day, even after Covert told him he did not want to talk about it anymore. *Id.* On or around November 4, 2021, the disaffection petition signed by nineteen employees (a majority of the thirty-four-member bargaining unit) was delivered to ADT officials. [R. 9, p. 6].

Consequently, on November 8, 2021, ADT notified the Union that it no longer enjoyed majority status among the bargaining unit and that its recognition would be withdrawn effective immediately. *Id.* at 7; [R. 1-1, p. 7]; [R. 36 (Sixth Circuit Opinion and Judgment), p. 5]. The following day, ADT notified the Louisville and Lexington employees that it had withdrawn recognition of the Union. [R. 36 (Sixth Circuit Opinion and Judgment), p. 5]. ADT then implemented the performance-based pay plan that Nixdorf had proposed during negotiations. *Id.* The new plan brought a variety of changes: employees' wages increased; they received bonuses and additional vacation time; their insurance plans changed; they were reclassified to at-will status; they were paid biweekly instead of weekly; sick days were rolled into general paid time off; and overtime pay was tied to weekly hours worked rather than daily hours worked. *Id.* The Board claimed (and this Court ultimately found there was reasonable cause to believe) that Sanders unlawfully solicited signatures for the petition and assisted in efforts to decertify the Union. [R. 1-1, p. 5]; [R. 15, p. 12].

On November 12, 2021, the Union filed an unfair labor practice charge against ADT, alleging violations of NLRA §§ 8(a)(1), (3), and (5). *See* [R. 1-4, Ex. 1 (Administrative Charges), pp. 1–7]. The Union filed additional charges on January 7, 2022. *See id.* at 7–9. Following an investigation, the Board filed a consolidated administrative complaint against ADT on March 25, 2022. *See* [R. 1-5, Ex. 2 (Administrative Complaint)]. The complaint declared that ADT solicited decertification of the Union, assisted in anti-union efforts of bargaining unit employees, bypassed the Union in discussing incentive and benefit information with bargaining unit employees, and terminated two employees, Mark Frazier and Marcus Rodriguez, because of their involvement in Union efforts. *Id.* at 4–8.

The Board filed a petition for injunctive relief in this Court on June 9, 2022, seeking an order requiring ADT to recognize and bargain in good faith with the Union; provide outstanding information requested by the Union; cease promising employees improved terms of employment on condition that they oust the Union; cease assisting in and soliciting the decertification of the Union; cease bypassing the Union and negotiating directly with bargaining-unit employees; rescind, at the Union's request, the unilaterally implemented changes to the terms and conditions of employment; notify employees of the district court's order by posting copies at its Louisville and Lexington facilities, distributing it electronically to employees, and reading it to employees at a mandatory meeting and in the presence of a Board agent; allow the Board reasonable access to its facility to monitor compliance with its posting requirement; and file with the district court a sworn affidavit certifying ADT's compliance with the order. [R. 1-25, pp. 2–4 (Proposed Order Granting Preliminary Injunction)]; *see also* [R. 36 (Sixth Circuit Opinion and Judgment), pp. 5–6].

On October 31, 2022, this Court granted in part and denied in part the Board's Petition. [R. 15]. Specifically, the Court determined that ADT unlawfully participated in the execution of the disaffection petition, withdrew recognition of the Union, and bypassed the Union and dealt directly with bargaining unit employees. *Id.* at 8–16, 21. The Court found, however, that the Board had not shown ADT unlawfully stalled the bargaining process by refusing to turn over certain employee information, nor that ADT violated the Act by unilaterally changing the terms and conditions of the employees' employment. *Id.* at 16–18. The Court further found that the Board had not shown ADT terminated either Frazier or Rodriguez for their union activism. *Id.* at 18–19. Accordingly, this Court granted the following relief:

> ADT, LLC **SHALL**:
>
> Immediately recognize the union as the exclusive collective-bargaining representative of the employees in the 'bargaining unit,' which includes:
>
>> All full-time and regular part-time employees originally described in the certification dated on January 25, 1971 (Case Number 9-RC-8733) classified by the Employer as residential and small business installers, residential and small business high volume commissioned installers, residential and small business service technicians, employed by the Employer at its facilities in Louisville and Lexington, KY; but excluding all alarm service investigators, relief supervisors, all office clerical employees and professional employees, guards and supervisors as defined in the Act; and excluding all commercial installers and commercial service technicians unless the employees are employed by the Employer and are located at, or are directly supervised by the Employer's supervisors located at, its Louisville and Lexington, KY facilities. If during the terms of this Agreement the Employer relocates the covered employees from Louisville or Lexington, KY office to another, this provision shall apply to the new office.
>
> Meet and bargain in good faith with the Union for a successor collective bargaining agreement;
>
> Provide the Union with any outstanding information requested on August 25, 2021; and

Distribute electronic or physical copies of this Order to all employees in the bargaining unit.

[R. 15, pp. 22–23].

The Board appealed, and the Sixth Circuit Court of Appeals affirmed in part, reversed in part, and remanded the matter to this Court for further proceedings. *See generally* [R. 36]. The Sixth Circuit ruled, as relevant here, that this Court erred in finding there was not "reasonable cause to believe that ADT committed an unfair labor practice by unilaterally altering the terms and conditions of employment" but remanded to this Court to consider whether it would be "just and proper" to grant the Board's requested relief, noting that the Union is not entitled to a "'pick and choose' recission order as a matter of right." *Id.* at 14, 16. The Sixth Circuit also ordered this Court to explain "its refusal to issue the cease-and-desist order sought by the Regional Director" after it "expressly found that 'ADT should be enjoined and restrained from engaging in the anti-union practices that gave rise to the Board's petition[.]'" *Id.* at 19.

Put simply, on remand, this Court is tasked with reconsidering its findings concerning ADT's unilateral changes to the terms and conditions of bargaining unit employees. *See id.* at 21. In addition, the Court must explain its failure to issue a cease-and-desist order consistent with its finding that ADT engaged in certain anti-union practices. *Id.* at 22. To ensure a complete and up-to-date record, the Court ordered supplemental briefing on the discrete issues relevant to this remand. [R. 41]. The parties, accordingly, tendered their respective briefs. [R. 42]; [R. 43]. The matter is now ripe for review.

## II.    Analysis

Section 7 of the National Labor Relations Act provides that employees "have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose

of collective bargaining or mutual aid or protection." 29 U.S.C. § 157. Section 8 of the NLRA establishes that it is "an unfair labor practice for an employer" "to interfere with, restrain, or coerce employees in the exercise" of their § 7 rights or "to refuse to bargain collectively with the representatives" of the employees. *Id.* at § 158(a)(1), (5).

The National Labor Relations Board has primary responsibility for adjudicating charges of unfair labor practices, subject to judicial review in the federal courts of appeals. *See Fleischut v. Nixon Detroit Diesel, Inc.*, 859 F.2d 26, 28 (6th Cir. 1988). To preserve the Board's remedial powers during administrative proceedings, Congress has authorized federal district courts to issue "such temporary relief or restraining order as [the court] deems just and proper." 29 U.S.C. § 160(j); *McKinney v. Starbucks Corp.*, 77 F.4th 391, 397 (6th Cir. 2023). "[S]ection 10(j) proceedings are merely ancillary to unfair labor practice proceedings to be conducted before the Board." *Fleischut*, 859 F.2d at 28 (citing *Gottfried v. Frankel*, 818 F.2d 485, 492 (6th Cir. 1987)). District courts cannot, therefore, "adjudicate the merits of the unfair labor practice case." *Id.* "The question of whether a violation of the Act has been committed is a function reserved exclusively to the Board, subject to appellate court review of final Board orders." *Id.* (quoting *Levine v. C & W Mining, Inc.*, 610 F.2d 432, 435 (6th Cir. 1979)). Indeed, district courts "have a limited deferential role in this process" and should "preserve the status quo until the completion of the Board's regular procedures." *McKinney v. Ozburn-Hessey Logistics, LLC*, 875 F.3d 333, 339 (6th Cir. 2017) (citing *Kobell For & on Behalf of N.L.R.B. v. United Paperworkers Int'l Union, AFL-CIO, CLC*, 965 F.2d 1401, 1406 (6th Cir. 1992)).

"Sixth Circuit precedent[1] establishes that before issuing a § 10(j) injunction, a district court must find that (1) there is 'reasonable cause' to believe that unfair labor practices have occurred,

---

[1] As the Sixth Circuit noted in its Opinion and Judgment, this Circuit's two-prong standard is "the more lenient position in an entrenched three-way circuit split on the standard for § 10(j) relief." [R. 36, p. 8]

and that (2) injunctive relief with respect to such practices would be 'just and proper.'" *Glasser ex rel. N.L.R.B. v. ADT Sec. Servs., Inc.*, 379 F. App'x 483, 485 (6th Cir. 2010) (quoting *Ahearn v. Jackson Hosp. Corp.*, 351 F.3d 226, 234 (6th Cir. 2003); *Schaub v. W. Mich. Plumbing & Heating, Inc.*, 250 F.3d 962, 969 (6th Cir. 2001)); *see also Starbucks Corp.*, 77 F.4th at 397 (reciting same two-part standard). The petitioner bears the burden of proof on both steps of the analysis. *Glasser v. Heartland—Univ. of Livonia, MI, LLC*, 632 F. Supp. 2d 659, 665 (E.D. Mich. 2009).

The "burden of establishing reasonable cause is 'relatively insubstantial.'" *Schaub*, 250 F.3d at 969 (quoting *Fleischut*, 859 F.2d at 29). The Board "need not prove a violation of the [Act] nor even convince the district court of the validity of the Board's theory of liability; instead, [the Director] need only show that the Board's legal 'theory is substantial and not frivolous.'" *Id.* (quoting *Fleischut*, 859 F.2d at 29). The Board "must also show that the facts of th[e] case are consistent with the Board's legal theory," *id.*, but the district court "may not resolve conflicting evidence or make credibility determinations," *Starbucks Corp.*, 77 F.4th at 397; *see also Ahearn*, 351 F.3d at 237 (noting that "fact-finding is inappropriate" in a § 10(j) proceeding). If reasonable cause exists, the district court must determine whether injunctive relief is "just and proper." *Starbucks Corp.*, 77 F.4th at 397. That standard is met when it is both "possible" and "necessary to return the parties to status quo pending the Board's proceedings in order to protect the Board's remedial powers under the NLRA." *Id.* (quoting *Ozburn-Hessey*, 875 F.3d at 339). "[T]he status quo is the state of affairs existing before the alleged unfair labor practices took place." *Id.* (quoting *Schaub*, 250 F.3d at 972).

**A. Cease-and-Desist Order**

---

(citing *Glasser v. ADT Sec. Servs., Inc.*, 379 F. App'x 483, 485 n.2 (6th Cir. 2010) (noting that some circuits use the two-prong approach, others use the more demanding preliminary injunction framework , and still others use a hybrid approach); *Starbucks Corp.*, 77 F.4th at 410–11 (Readler, J., concurring) (suggesting that the Sixth Circuit "reconsider our approach")).

Taking the issues out of turn, the Court first addresses the appropriateness of a cease-and-desist order restraining ADT from engaging in the anti-union activities that gave rise to the Board's petition. On this issue, the Sixth Circuit stated:

> With respect to the Regional Director's request for a cease-and-desist order, however, the district court's decision causes us some concern. The court expressly found that "ADT *should be enjoined and restrained* from engaging in the anti-union practices that gave rise to the Board's petition," but the court did not enter an order specifically restraining any unlawful activities. R. 15, District Court Order, PageID 2795 (emphasis added). Without some explanation from the district court, we cannot know why it ultimately declined to issue relief that it seemed to say was necessary. On remand, therefore, the district court should reconsider its refusal to issue the cease-and-desist order sought by the Regional Director and provide an appropriate justification for its ultimate decision.

[R. 36, p. 21]. Indeed, in this Court's order granting in part the Board's Petition, it explained:

> The Court agrees with the Board that injunctive relief is necessary here to preserve its remedial powers, as a final order requiring ADT to bargain could be ineffective if the Union has lost all remaining support by the time it issues. *See Muffley v. APL Logistics Mgmt. Warehouse Servs., Inc.*, No. 3:08-CV-26-R, 2008 WL 544455, at *4 (W.D. Ky. Feb. 27, 2008), *opinion clarified*, No. 3:08-CV-26-R, 2008 WL 4561573 (W.D. Ky. Oct. 10, 2008) ("The longer a union is kept from working on behalf of employees, the less likely it is that it will be able to organize and represent those employees effectively if and when the Board orders the company to commence bargaining."). Accordingly, the Court finds that ADT should be enjoined and restrained from engaging in the anti-union practices that gave rise to the Board's petition which are supported by sufficient evidence. These include the Board's claims that ADT: (1) promised better benefits if employees decertified the Union, (2) solicited employees to circulate the disaffection petition, (3) assisted in the anti-union activities of bargaining unit employees, and (4) withdrew recognition of the Union as its employees' bargaining representative. The Court therefore concludes that requiring ADT to re-recognize the Union will return the parties to the status quo and protect the remedial powers of the Board.

[R. 15, p. 21]. And with this, the Court intended to prevent ADT from engaging in those anti-union practices, and to require ADT to re-recognize the Union as the bargaining unit members' representative. However, due to an oversight, the Court's ordering section did not include such language.

Before reaching this conclusion, the Court applied the two-part test articulated in *Glasser*, 379 F. App'x at 485, and found that certain injunctive relief would be just and proper. First, the Court considered each of the unfair labor practices as alleged by the Board, and ultimately determined that "the Board has offered evidence that would support its theory" under the NLRA, as "there is reasonable cause to believe the disaffection petition was tainted by ADT's coercive involvement in its circulation and execution." [R. 15, p. 12] (citing *Glasser v. Heartland—Univ. of Livonia, MI, LLC*, 632 F. Supp. 2d 659, 668 (E.D. Mich. 2009)). This evidence included the following testimony from Michael Covert regarding communications with his supervisor, Eric Sanders:

> I was getting parts one morning, and he called me to his office to inform me of a new plan, and he acted like it was a secret. Like, hey, this is something we're going to introduce you to. This is a new plan that you don't have to have the Union with. If you was to remove the Union, you'd get a lot more benefits, and you would get a pay increase, and you get more vacation, and you could actually buy an additional week for vacation. And he was telling me all of these great benefits that I could have, if we wasn't to have the Union in place. And I was skeptical. I was wanting to ask.
>
> Q. Was there any discussion of what would happen with pay?
>
> A. Yes. There was a bonus that we would get, along with the increase of our hourly wage. The bonuses would happen as — like he said that nothing would change with our work life, but for what we do now, we would get additional money for doing it.

[R. 1-7, Ex. 4(a) (Administrative Hearing Transcript Volume 1), p. 135]. Covert also testified that Sanders provided him a copy of ADT's proposed incentive plan, "went into it in detail," and encouraged Covert to "tell everyone about this document and like the pros of it and how it's super beneficial and just to advertise it." *Id.* at 137.

Recognizing that, in Section 10(j) proceedings, the Court cannot "adjudicate the merits of the [] case," *Fleischut v. Nixon Detroit Diesel, Inc.*, 859 F.2d 26, 28 (6th Cir. 1988) (citation omitted), and that the Board need only produce "some evidence" of alleged unfair labor practices

to meet its "relatively insubstantial" evidentiary burden, *Gottfried*, 818 F.2d at 493; *see also Frye, For & on Behalf of N.L.R.B. v. Speciality Envelope, Inc.*, 10 F.3d 1221, 1225 (6th Cir. 1993) ("So long as the Board presents evidence that supports its theory, conflicting evidence does not preclude a finding of reasonable cause."), the Court found that "[t]he Board has met its burden with regard to the disaffection petition, as the evidence could support that the 'preparation, circulation, and signing of the petition' did not constitute 'the free and uncoerced act of the employees concerned,' . . . if they believed they had to sign it to receive the new incentive plan." [R. 15, p. 13].

The Court further determined that "because ADT relied on the petition to withdraw formal recognition of the Union, . . . the Board has likewise met its burden with regard to the withdrawal." *Id.* In reaching this conclusion, the Court considered evidence that Sanders' behavior tended to have a lasting effect on employees and cause their disaffection, as Covert testified that Sanders "constantly" brought the issue up even after Covert told him he "didn't really want to talk about [it] anymore," [R. 1-7, Ex. 4(a) (Administrative Hearing Transcript Volume 1), p. 149], and pushed back on Covert's reports that employees were hesitant to implement the incentive program and remove the Union by "insist[ing] it would be beneficial to [them]" and assuring Covert "it's a change and most people find [it] nerve-racking. So it's just something new. That that's why people were scared of it, because it's a new change." *Id.* at 153. The Court also noted evidence that Sanders' conduct impacted employee morale, as Covert testified that, after he introduced the incentive plan, "[a] lot of people were surprised, but like they was very suspicious of all the good news. Because everybody knows, with so much good news, there's got to be some catch. And they was just uneasy." *Id.* at 144. Further, the Court observed that ADT offered no independent basis for which it could have lawfully withdrawn the Union's recognition. Thus, the Court, at that time, found "a clear 'causal nexus' between the employees' disaffection, ADT's subsequent withdrawal

- 12 -

of Union recognition, and the 'unremedied unfair labor practice' (i.e., ADT's unlawful assistance

with the disaffection petition)." [R. 15, p. 14] (citing *AT Sys. West, Inc.*, 341 NLRB 57, 59 (2004);

*Master Slack Corp.*, 271 NLRB 78, 84 (1984)).

Having found reasonable cause to believe ADT committed an unfair labor practice with

respect to the disaffection petition and withdrawal of its recognition of the Union, the Court then

considered whether the relief requested would be "just and proper." *Glasser*, 379 F. App'x at 485.

The Court outlined the just-and-proper standard, which measures whether a temporary injunction

is necessary for the protection of the Board's remedial powers. The relief contemplated under §

10(j) is only that "reasonably necessary to preserve the ultimate remedial power of the Board and

is not to be a substitute for the exercise of that power." *Ahearn*, 351 F.3d at 236 (citation omitted).

"Interim judicial relief is warranted whenever 'the circumstances of a case create a reasonable

apprehension that the efficacy of the Board's final order may be nullified, or the administrative

procedures will be rendered meaningless.'" *Sheeran*, 683 F.2d at 979 (quoting *Angle v. Sacks ex*

*rel. NLRB*, 382 F.2d 655, 660 (10th Cir. 1967)).

Indeed, when deciding if injunctive relief is just and proper, the court must consider if the

remedy is "necessary to return the parties to status quo pending the Board's proceedings in order

to protect the Board's remedial powers under the NLRA, and whether achieving status quo is

possible." *Kobell*, 965 F.2d at 1410 (quoting *Gottfried*, 818 F.2d at 495); *see also Fleischut*, 859

F.2d at 30 ("[T]he district court must determine that it is in the public interest to grant the

injunction, so as to effectuate the policies of the National Labor Relations Act or to fulfill the

remedial function of the Board.") (internal citation and quotation marks omitted). "The status quo

is the state of affairs existing before the alleged unfair labor practices took place." *Starbucks Corp.*,

77 F.4th at 397 (citation omitted).

With these standards in mind, the Court concluded that ADT should be enjoined from engaging in the anti-union activities that led to the disaffection petition's execution and ultimate withdrawal of the Union's recognition. *See* [R. 15, p. 21]. More specifically, the Court concluded that injunctive relief was necessary to preserve the Board's remedial powers, as a final order requiring ADT to bargain could be ineffective if the Union lost all remaining support before it issued. *See Muffley v. APL Logistics Mgmt. Warehouse Servs., Inc.*, No. 3:08-CV-26-R, 2008 WL 544455, at *4 (W.D. Ky. Feb. 27, 2008), *opinion clarified*, No. 3:08-CV-26-R, 2008 WL 4561573 (W.D. Ky. Oct. 10, 2008) ("The longer a union is kept from working on behalf of employees, the less likely it is that it will be able to organize and represent those employees effectively if and when the Board orders the company to commence bargaining."). This rationale still holds true, as a final Board order still has not issued. Moreover, other courts have found similar injunctive relief just and proper in Section 10(j) proceedings where the Board presented evidence of unlawful anti-union activities. *See, e.g.*, *Heartland–Univ. of Livonia*, 632 F.Supp.2d at 672–74 (granting Board's request to enjoin employer from "refusing to recognize the Union" or bargain in good faith and from "unilaterally implementing wage increases or changes to the terms of employment of Unit employees" because such injunctive relief is "necessary to prevent further erosion of the Union's support among employees" after employer unlawfully withdrew its recognition); *Calatrello v. Carriage Inn of Cadiz*, No. 2:06-CV-697, 2006 WL 3230778, at *7 (S.D. Ohio Nov. 6, 2006) (ordering employer "to recognize the Union as the certified exclusive collective bargaining representative and resume Bargaining with the Union" after employer "unlawfully withdrew its recognition from the Union and therefore [] engaged in unfair labor practices within the meaning of § 8(a)(5) of the NLRA"); *APL Logistics*, 2008 WL 544455, at *4 (finding injunctive relief requiring employer to "recognize and bargain with" union and to refrain from "making unilateral

changes in the wages and other terms and conditions" of employment just and proper because "[t]he longer a union is kept from working on behalf of employees, the less likely it is that it will be able to organize and represent those employees effectively if and when the Board orders the company to commence bargaining" and "[t]he deprivation to employees from the delay in bargaining and the diminution of union support is immeasurable" since "a forward-looking order [requiring an employer to bargain] cannot fully compensate [] employees for the variety of benefits that good-faith collective bargaining with the Union might otherwise have secured for them in the present"); *Muffley ex rel. N.L.R.B. v. DaNite Holdings, Ltd.*, No. 2:10-CV-605, 2010 WL 3001854, at \*4, \*5 (S.D. Ohio July 30, 2010) (ordering employer to "recognize and bargain in good faith with the Unions" and "notify and bargain to agreement or good faith impasse with the Unions before making any changes in the terms and conditions of employment of unit," and explaining that "[i]nterim injunctive relief is often appropriate in cases where the employer has withdrawn recognition of the union and refuses to bargain" and ordering employer to "recognize and bargain in good faith with the Unions as the exclusive collective-bargaining representative of its employees in the following unit").

Thus, to correct the Court's inadvertent error in failing to include such language in the ordering section of its October 31, 2022 Order at docket entry 15, and for all the reasons discussed herein, ADT shall be enjoined and restrained from engaging in the anti-union practices that gave rise to the Board's petition, including the Board's claims that ADT promised better benefits if employees decertified the Union, solicited employees to circulate the disaffection petition, assisted in the anti-union activities of bargaining unit employees, and withdrew recognition of the Union as its employees' bargaining representative. With this, ADT shall be required to re-recognize the Union as its employees' bargaining representative.

The Court also notes that, on this point, ADT offers only a single, conclusory paragraph in its supplemental brief suggesting that the Court "properly declined to issue a broad cease-and-desist order" the first time around because, according to ADT, "[i]f the Board ultimately determines that ADT violated the Act, it has the authority to correct these violations and issue its own cease-and-desist order" and "[t]he Regional Director has yet to make a showing at any point in this litigation as to why a broad cease-and-desist order must issue on an interim and emergency relief basis." [R. 43, p. 5]. This position, however, ignores the Sixth Circuit's and this Court's previous recognition that "the Regional Director continues to maintain an interest in securing interim relief in these § 10(j) proceedings" because the Board has not adopted (and may not for some time) the December 23, 2022 decision [R. 42-1] of Administrative Law Judge Andrew S. Gollin ("ALJ Gollin"), who is overseeing this case at the administrative level. *See* [R. 41, pp. 1–2]; [R. 36 (Sixth Circuit Opinion and Judgment), p. 9]; *see also Sheeran v. Am. Commercial Lines, Inc.*, 683 F.2d 970, 979 (6th Cir. 1982) (quoting *Angle v. Sacks ex rel. NLRB*, 382 F.2d 655, 660 (10th Cir. 1967)) ("Interim judicial relief is warranted whenever 'the circumstances of a case create a reasonable apprehension that the efficacy of the Board's final order may be nullified, or the administrative procedures will be rendered meaningless.'"); *Kobell*, 965 F.2d at 1406 (explaining that because "[a]dministrative review is often slow[,] . . . interim injunctive relief occasionally may be necessary to preserve the remedial power of the Board"). Moreover, ADT fails to explain how a cease-and-desist order enjoining it from limited, clearly defined actions would be overly "broad." *See Heartland–Univ. of Livonia*, 632 F.Supp.2d at 672–74; *Calatrello*, 2006 WL 3230778, at *7; *APL Logistics*, 2008 WL 544455, at *4; *DaNite Holdings*, 2010 WL 3001854, at *4, *5.

Aside from this conclusory paragraph, ADT offers no new arguments that might convince the Court that the cease-and-desist order—which it already deemed necessary in its October 31, 2022 order—should not issue. The Court, therefore, considers this issue waived by ADT. *See United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) (observing that "[w]e consider issues not fully developed and argued to be waived"). Nevertheless, having thoroughly assessed the merits when it considered the Board's Petition initially and in re-examining them now, the Court once again finds that ADT should be enjoined and restrained from engaging in the anti-union practices that gave rise to the Board's petition in this action.

### B. Discretionary Rescission of Unilateral Changes to Terms and Conditions of Employment

Next, the Court considers whether it would be just and proper to grant the Board's request for ADT to rescind, at the Union's request, any or all unilateral changes to the terms and conditions of bargaining unit members' employment, which include implementation of a new incentive program, increased base wage rates, modified vacation, altered job titles, a move from weekly to bi-weekly pay periods, elimination of daily overtime, and changes to the attendance policy to allow for paid time off days rather than sick, bereavement, and jury duty leave. [R. 42-1, p. 12]; *see also* [R. 36 (Sixth Circuit Opinion and Judgment), p. 5].

In considering the Board's appeal, the Sixth Circuit determined that "there was reasonable cause to believe that ADT was actively working to undermine the Union's support while negotiations were ongoing," and that, ultimately, the Board had shown "reasonable cause to believe that ADT had committed an unfair labor practice by unilaterally altering the terms and

conditions of employment." [R. 36, pp. 13, 14]. Consistent with that finding, the Sixth Circuit directed this Court to consider whether it would be just and proper to grant the Board's request for an order granting the Union discretion to rescind any or all of those unilateral changes. *Id.* at 14–17. *See also Starbucks Corp.*, 77 F.4th at 397 (explaining that where reasonable cause exists to show an unfair labor practice, the district court must then determine whether injunctive relief is "just and proper" to remedy the unfair practice).

Again, the just-and-proper standard measures whether a temporary injunction is necessary for the protection of the Board's remedial powers, and contemplates only that relief which is "reasonably necessary to preserve the ultimate remedial power of the Board and is not to be a substitute for the exercise of that power." *Ahearn*, 351 F.3d at 236 (citation omitted). "Interim judicial relief is warranted whenever 'the circumstances of a case create a reasonable apprehension that the efficacy of the Board's final order may be nullified, or the administrative procedures will be rendered meaningless.'" *Sheeran*, 683 F.2d at 979 (citation omitted). When deciding if injunctive relief is just and proper, the Court must consider if the remedy is "necessary to return the parties to status quo pending the Board's proceedings in order to protect the Board's remedial powers under the NLRA, and whether achieving status quo is possible." *Kobell*, 965 F.2d at 1410 (citation omitted) "The status quo is the state of affairs existing before the alleged unfair labor practices took place." *Starbucks Corp.*, 77 F.4th at 397 (citation omitted).

In its supplemental brief, the Board argues that requiring ADT to rescind, at the Union's request, any or all of the unilateral changes made to bargaining unit employees' terms and conditions of employment is necessary to restore the status quo. [R. 42, pp. 2–3]. The Board also submits that this remedy "is warranted to permit the parties to salvage some of the important bargaining equality that existed before [ADT]'s unilateral changes." *Id.* at 4 (cleaned up).

Moreover, the Board believes "interim rescission is necessary to curb the predictable loss of employee support for the Union caused by the unilateral changes in critical terms and conditions, damage that an eventual Board order likely cannot remedy." *Id.* at 5.

For its part, ADT contends "an order to rescind the pay plan at the Union's option would not serve Section 10(j)'s purpose of preserving the status quo until the Board exercises its ultimate remedial power." [R. 43, p. 4]. Because bargaining unit employees benefit from higher wages under the unilaterally implemented incentive plan, ADT suggests that recission of the plan "would assist the Union to the detriment of ADT employees" and, in ADT's belief, would be neither just nor proper. *Id.* at 4.

It is noteworthy that on December 23, 2023, after a hearing, ALJ Gollin determined that, "[b]ased on the totality of the evidence," ADT "violated Section 8(a)(5) and (1) when it withdrew recognition based on the tainted decertification petition" and that, "[s]ince the withdrawal of recognition was unlawful, [ADT]'s subsequent refusal to bargain and unilateral changes to the mandatory subjects 10 of bargaining at issue also violated Section 8(a)(5) and (1)." [R. 42-1, p. 22] (citing *Hospital Mononita de Guayama Inc.*, 371 NLRB No. 108 (2022); *St. George Warehouse, Inc.*, 341 NLRB 904 (2004) enfd. 420 F 3d 294 (3d Cir. 2005); *Josten Concrete Prods. Co.*, 303 NLRB 74 (1991)). Consequently, ALJ Gollin recommended that ADT be required, "at the Union's discretion and upon its request, [to] rescind any or all of the unilateral changes in terms and conditions of employment made since the withdrawal of recognition" and, "upon request of the Union, restore the status quo as it existed as of the expiration of the parties' collective-bargaining agreement." *Id.* at 24. As the Sixth Circuit put it, "the ALJ overseeing the administrative proceedings ruled in the Regional Director's favor in all respects relevant to this appeal and

- 19 -

recommended granting essentially the same relief that the Regional Director seeks in these § 10(j) proceedings." [R. 36 (Sixth Circuit Opinion and Judgment, p. 7].

Even so, as explained, the Board has not adopted ALJ Gollin's recommendation, which is before the Board on exceptions filed by ADT. In its supplemental brief, ADT suggests more broadly that, given this posture, the Court should simply defer to the Board and decline to grant any interim relief. *See* [R. 43, pp. 3–4]. To support its position, ADT cites *Calatrello v. Automatic Sprinkler Corp. of America*, 55 F.3d 208 (6th Cir. 1995). In ADT's view, *Automatic Sprinkler* stands for the proposition that "the Board, not the district court, holds the ultimate remedial authority under the Act." [R. 43, p. 3]. And that may be. But Section 10(j) contemplates that a district court may grant any relief "reasonably necessary to preserve the ultimate remedial power of the Board," *Ahearn*, 351 F.3d at 236 (citation omitted), bearing in mind that "[a]dministrative review is often slow." *Kobell*, 965 F.2d at 1406; *see also Sheeran*, 683 F.2d at 979. In any case, ADT's reliance on *Automatic Sprinkler* is misplaced, because its facts are distinguishable from those here. In *Automatic Sprinkler*, the Sixth Circuit concluded that a district court erred in finding there was not reasonable cause to believe unfair labor practices had occurred, but nevertheless affirmed the district court's decision because it found no abuse of discretion in the district court's determination that an injunction should not issue. *Automatic Sprinkler*, 55 F.3d at 214. Specifically, the Sixth Circuit deferred to the district court's determination "that injunctive relief would not be just and proper because the injunction sought by the Board is too broad, would result in undue financial hardship to the Company, and is not necessary to preserve the ultimate remedial authority of the Board," but the Sixth Circuit explicitly noted that it affirmed "the judgment of the district court without prejudice to the Board to seek a narrower injunction." *Id.*

The injunction deemed overbroad in *Automatic Sprinkler* sought to "require[e] the Company to restore its sprinkler fitting operations as they existed prior to the Company's subcontracting of all unit work, to reinstate the employees who had been performing this work, and to recognize and, upon request, bargain in good faith with the Unions," which the Sixth Circuit recognized "would be extremely financially burdensome" for Automatic Sprinkler because the company had subcontracted its sprinkler fitting jobs due to a steep decline in profits over several years. *Id.* at 212, 210. Here, in contrast, the Board's request for injunctive relief is sufficiently tailored, as it would impact only the terms of the bargaining unit members' employment and not, as in *Automatic Sprinkler*, an entire division of ADT's business operations. Moreover, ADT has raised no arguments nor cited any evidence or supportive facts concerning the financial harm it may suffer if an injunction were to issue. And this makes sense, because unlike in *Automatic Sprinkler*, ADT *increased* its employees' wages when it unilaterally implemented its new incentive plan. The Court is not concerned, based on this record, that an injunction would cause ADT the type of financial harm the Sixth Circuit recognized in *Automatic Sprinkler*. These crucial distinctions render *Automatic Sprinkler* inapplicable here.

Moreover, in Section 10(j) proceedings on similar facts as here, other courts have found it just and proper to order rescission of unlawful, unilateral changes made by employers before the Board issues its final order. *See, e.g.*, *Harrell ex rel. N.L.R.B. v. Am. Red Cross, Heart of Am. Blood Servs. Region*, 714 F.3d 553, 558–59 (7th Cir. 2013) (reversing district court's decision not to order recission of employer's unilateral changes, recognizing that "the intent of Section 10(j) is to restore the status quo as it existed before the onset of the unfair labor practices" and "[t]he rescission of changed terms and conditions would merely return the parties to the lawful status quo," and remanding "to the district court to grant the interim injunctive relief sought by the

NLRB"); *Paulsen ex rel. N.L.R.B. v. All Am. Sch. Bus Corp.*, 967 F. Supp. 2d 630, 643 (E.D.N.Y. 2013) (finding "reasonable cause to believe that respondents did not bargain in good faith and violated sections 8(a)(1) and 8(a)(5) of the Act by . . . unilaterally implementing their best and final offer" and determining "[i]nterim rescission is [] necessary to prevent respondents from being able to use restoration of the status quo as a bargaining tool in negotiations, further impairing the union's collective bargaining position"). Indeed, "[c]ourts have recognized that interim rescission orders are the default remedy when employers violate section 8(a)(5) by enacting unilateral changes to critical terms and conditions, such as by decreasing wages, eliminating paid sick and vacation leave, and subcontracting their operations." *Fernbach ex rel. N.L.R.B. v. Sprain Brook Manor Rehab, LLC*, 91 F. Supp. 3d 531, 546 (S.D.N.Y. 2015) (counting cases). ADT's position that the Court should not order interim relief of any kind before the Board issues its final ruling is wholly unconvincing.

Having established that interim relief is generally appropriate pending a final Board order, the Court considers whether the Board's specific request that the Union have discretion to keep or rescind ADT's unilateral changes would be just and proper under the facts of this case. Upon careful review of the record, the Sixth Circuit's Opinion and Judgment [R. 36], ALJ Gollin's findings [R. 41-2], and relevant case law, the Court finds this remedy appropriate. Again, the Sixth Circuit Court of Appeals found reasonable cause to believe ADT's unilateral changes to terms and conditions of bargaining unit members' employment was unlawful, and ALJ Collin conclusively found that ADT "violated Section 8(a)(5) and (1) of the Act when it withdrew recognition of the Union . . . and, thereafter, when it ceased bargaining and unilaterally changed the unit employees' wages, hours and other terms and conditions of employment." *See* [R. 36, pp. 13, 14]; [R. 42-1, p. 21–22]. Still, ADT opposes an order that would allow the Union to rescind these changes, and

understandably focuses heavily on the fear that its employees would be harmed if the new incentive plan was rescinded. To be clear, however, the Board is seeking mere *discretion* for the Union to rescind the unilateral changes ADT made, which do not just include increased wages, a new bonus structure, and additional vacation time, but also changes in bargaining unit members' insurance plans, reclassification to at-will employment, biweekly instead of weekly pay, and changes to sick and overtime pay. [R. 36 (Sixth Circuit Opinion and Judgment), p. 5]. This discretion, the Board explains, would allow "the Union to preserve the changes it deems favorable and request rescission of unfavorable terms," which "establishes a lawful floor from which to bargain further, allows the Union to exercise due agency as the exclusive bargaining representative of employees, and moves the Union closer to a legitimate level of employee support necessary to continue bargaining on a level playing field." [R. 42, p. 8].

Of course, as the Sixth Circuit itself acknowledged, a "pick and choose" order is certainly not a remedy that is awarded as a matter of course at the Section 10(j) stage:

> It is significant that the Regional Director specifically seeks an order allowing the Union to demand rescission of "any or all" unilaterally implemented terms and conditions of employment. This means that the Union may "pick and choose" from the newly implemented terms, demanding rescission of changes unfavorable to employees while leaving in place the changes favorable to them. In appropriate cases, the Board has ordered such relief, and courts have upheld it. *See, e.g.*, *Cal. Pac. Med. Ctr. v. NLRB*, 87 F.3d 304, 311 (9th Cir. 1996); *Visiting Nurse Servs. of W. Mass. v. NLRB*, 177 F.3d 52, 61–62 (1st Cir. 1999); *CJC Holdings, Inc.*, 320 N.L.R.B. 1041, 1047 (1996), enf'd, 110 F.3d 794 (5th Cir. 1997) (per curiam). But when the Board enters an order, the remedy represents the conclusion of a full adversarial proceeding in which an employer has been found liable after an opportunity to contest the charges against it and to present its views regarding a remedy. *See* 29 U.S.C. § 160(b), (c); 29 C.F.R. § 101.12. That courts of appeals enforce Board-issued "pick and choose" orders in appropriate circumstances does not mean that this remedy is required as a matter of course, particularly in a preliminary § 10(j) proceeding. At this stage, the Regional Director has made no definitive showing of ADT's liability. Indeed, under our circuit's caselaw, the Regional Director needs to make only a minimal showing to obtain § 10(j) relief. *See Schaub*, 250 F.3d at 969 (explaining that the "burden of establishing reasonable cause is 'relatively insubstantial'" (quoting *Fleischut*, 859 F.2d at 29)). Because the

Regional Director has not shown that the Board is entitled to an interim "pick and choose" rescission order as a matter of right, we decline to bypass the district court's discretionary function by directing that such an order be entered ourselves.

[R. 36 (Opinion and Judgment), pp. 15–16]. The Court shares the Sixth Circuit's concerns with this broad remedy but nevertheless finds it appropriate under the specific circumstances of this case for several reasons.

First, it is significant that while this Court cannot "adjudicate the merits of the unfair labor practice case" and has "a limited deferential role in this process" which should serve merely to "preserve the status quo until the completion of the Board's regular procedures," *Fleischut*, 859 F.2d at 28; *Ozburn-Hessey*, 875 F.3d at 339 (citation omitted), the ALJ overseeing this case, after a multi-day evidentiary hearing and under the more rigorous standards of Board proceedings, *see Fleischut*, 859 F.2d at 28 (explaining that "[t]he question of whether a violation of the Act has been committed is a function reserved exclusively to the Board") (citation omitted), found that the Union is entitled to the "pick and choose" rescission order it seeks in these Section 10(j) proceedings. *See* [R. 41-2, p. 24]. And although ALJ Gollin's decision has not been formally adopted by the Board, the Court simply notes, as the Sixth Circuit did, that his decision is part of the Board's "adversarial proceeding in which an employer has . . . an opportunity to contest the charges against it and to present its views regarding a remedy." [R. 36 (Sixth Circuit Opinion and Judgment), p. 16] (citing 29 U.S.C. § 160(b), (c); 29 C.F.R. § 101.12). Put simply, having considered all the record evidence presented by both parties, ALJ Gollin reached the same conclusion as the Court does here. To be clear, the Court does not rest its decision on ALJ Gollin's findings, which are not binding in any way. Instead, the Court simply notes, as the Sixth Circuit did, that ALJ Gollin, after a full hearing, found ADT committed unlawful practices and recommended that the Board grant the Union discretion as to which unilateral changes to rescind.

- 24 -

Second, the Court observes that other federal courts, in Section 10(j) proceedings, have found it appropriate to issue discretionary rescission or "pick and choose orders" under similar circumstances. *See Norelli v. HTH Corp.*, 699 F. Supp. 2d 1176, 1201, 1207 (D. Haw. 2010), aff'd sub nom. *Frankl v. HTH Corp.*, 650 F.3d 1334 (9th Cir. 2011) (ordering employer to "immediately rescind, at the Union's request, any or all of the unilateral changes to bargaining unit employees' terms and conditions of employment" because those changes, among other anti-Union activities, cause irreparable harm by "send[ing] the message to the employees that their union is ineffectual, impotent, and unable to effectively represent them"); *Overstreet v. El Paso Disposal, L.P.*, 668 F. Supp. 2d 988, 1015 (W.D. Tex. 2009), aff'd as modified, 625 F.3d 844 (5th Cir. 2010) (employing a more lenient standard similar to that in the Sixth Circuit, finding "the Court has reasonable cause to believe that Respondent made unilateral changes, and it is just and proper that these changes be rescinded upon request by the Union" because "[t]his temporary relief will help restore the lawful status quo, thereby empowering the Board to impose effectual remedies," and ultimately ordering employer to "upon request of the Union, rescind any or all unilateral changes to . . . employees' terms and conditions of employment"); *Morio v. N. Am. Soccer League*, 632 F.2d 217, 218 (2d Cir. 1980) (employing a more lenient Section 10(j) standard and affirming district court's order allowing player's union "to rescind, at their option, any or all provisions of any current player contract," that were changed unilaterally, with the exception of certain "'exclusive rights' provisions," and noting "[t]his form of relief was 'just and proper'" and "within the trial court's discretion"); *see also DaNite Holdings*, 2010 WL 3001854, at *5 (ordering employer to "notify and bargain to agreement or good faith impasse with the Unions before making any changes in the terms and conditions of employment of unit employees" and to "rescind, upon the Unions' request, any changes to the terms and conditions of employment").

Perhaps most helpful to the Court's analysis, in *Perez v. Noah's Ark Processors, LLC*, a district court ordered that an employer "[a]t the Union's election, rescind any or all of the unlawful unilateral changes to the employees' terms and conditions of employment, including any implemented pursuant to [the employer's] 'Best and Final Proposal'" during the bargaining process. No. 4:19-CV-3016, 2019 WL 2076793, at *14 (D. Neb. May 10, 2019). The court found this remedy appropriate after the employer "raised employee wages, during the course of collective bargaining (or at least what should have been collective bargaining)" which the court acknowledged "might seem harmless, but [is] a violation of the employer's duty to bargain in good faith to unilaterally change the conditions of employment presently under negotiation." *Id.* at *10 (citation omitted). In doing so, the court explained that "[u]nilateral implementation of wage increases greater than those offered the Union (because none were offered) is [] indicative of bad faith, for such action is necessarily inconsistent with a sincere desire to conclude an agreement with the union." *Id.* at *11. The court continued:

> Such action by the employer is a circumvention of the duty to negotiate which frustrates the objectives of § 8(a)(5) much as does a flat refusal. . . . Intuitively, if the employer engages in unilateral action, there may be nothing left for the parties to negotiate about and § 8(a)(5) would thus be violated. On the other hand, § 8(a)(5)'s prohibition is also literal. Section 8(a)(5) makes it illegal for an employer to refuse to bargain collectively with the representatives of his employees. Quite simply, the employer must bargain with the union about changes it wishes to make. . . . . And perhaps most relevant in this case, given Noah's Ark's other behavior, "[s]uch unilateral action will also often send the message to the employees that their union is ineffectual, impotent, and unable to effectively represent them." . . . Noah's Ark clearly made unilateral changes to employee wages, which are generally in the heartland of issues subject to collective bargaining.

*Id.* at *10–11 (cleaned up). The same is true here. The Board has provided evidence that ADT made unlawful unilateral changes to the terms and conditions of bargaining unit members' employment, including unilateral wage increase, in violation of the NLRA. Such unilateral action often sends the message that the union is ineffectual and impotent. The Court's temporary relief

granted herein will restore the parties' bargaining positions and allow the Board to impose effective remedies.

Again, the Court emphasizes that the specific facts of this case render a "pick and choose" rescission order necessary to return the parties to the status quo, or as close to it as possible. As stated, the new performance-based pay plan ADT implemented brought a variety of changes to bargaining unit members' employment: their wages increased; they received bonuses and additional vacation time; their insurance plans changed; they were reclassified to at-will employment status; they were paid biweekly instead of weekly; sick days were rolled into general paid time off; and overtime pay was tied to weekly hours worked rather than daily hours worked. [R. 36 (Sixth Circuit Opinion and Judgment), p. 5]. Of course, some of these changes (most notably the wage increase), are favorable to employees and provide an immediate, palpable benefit. This, in turn, works to the benefit of ADT, as employees may feel allegiance to the company because of these positive changes, which they were convinced they could not receive without decertifying the Union. *See* [R. 36 (Sixth Circuit Opinion and Judgment), p. 4] (discussing testimony that ADT manager Eric Sanders told his subordinate that there was an opportunity to "get a lot more benefits" if the employees ousted the Union). But on the flip side of that, some of the changes ADT implemented as part of the performance-based pay plan are less favorable to bargaining unit members, which is why the Union opposed it as presented, because it introduced at-will employment, gave ADT more control over the rate of pay, and limited employee-grievance protections. *Id.* at 3. These changes may seem insignificant when packaged with an immediate and palpable wage increase, but the potential negative impacts of those changes may be gradually felt by employees as time goes on.

Allowing the Union discretion, therefore, to rescind unfavorable changes and maintain favorable ones would help to correct the message sent to employees that the Union is "ineffectual, impotent, and unable to effectively represent them." *Perez*, 2019 WL 2076793, at *11. It will also restore the status quo by "evening the playing field," so to say, and working to undo some of the harm caused by ADT's anti-union activities. Otherwise, if the Court were to order rescission of all unilateral changes made by ADT, there is significant risk of further eroding Union support, as employees would almost certainly blame the Union for the loss of favorable benefits (such as wage increases) they have now enjoyed for several years. ADT, as a consequence, would maintain the favorable position it achieved through its unlawful anti-union practices. Indeed, as evidenced by the text messages Union Steward Marcus Rodriguez received by bargaining unit members expressing their frustration with what they considered to be weak demands by the Union, [R. 36 (Sixth Circuit Opinion and Judgment), p. 4], employees are understandably highly concerned with their wages. Strictly following a "return to status quo" would not, therefore, be protective of the Union's remedial powers but, rather, would undercut them. Because the goal of Section 10(j) proceedings is to grant the relief "necessary to return the parties to status quo pending the Board's proceedings *in order to protect the Board's remedial powers*," *Kobell*, 965 F.2d at 1410 (emphasis added); *see also Automatic Sprinkler*, 55 F.3d at 214; *Ahearn*, 351 F.3d at 236, the Court finds that a discretionary rescission order is necessary to do so. As the First Circuit Court of Appeals poignantly stated when enforcing a Board order granting a union discretionary rescission of an employer's unilateral changes:

> The employer here played a risky hand in its tactics, a hand contrary to the prevailing law. In the quid pro quo of collective bargaining, that employees may keep the quid of wage increases while the employer may not keep the quo of the rest of the package is the consequence of the employer's decision to unilaterally remove these subjects from bargaining and implement them without union agreement.

*Visiting Nurse Servs. of W. Massachusetts, Inc. v. N.L.R.B.*, 177 F.3d 52, 61–62 (1st Cir. 1999).[2]

For all these reasons, the Court finds a discretionary rescission order appropriate here. And the Board recognizes that allowing the Union this discretion will not necessarily mean that employees will lose new benefits or wage increases, "consistent with [the Board's] traditional refusal to penalize employees by revoking benefits conferred as a result of an unfair labor practice." *Id.* at 9; *see also id.* at 7 ("The remedy is designed to allow restoration of old terms, while preserving favorable new terms[.]"). Indeed, the Board is requesting an order that simply "[p]ermit[s] the Union to preserve the changes it deems favorable and request rescission of unfavorable terms." *Id.* at 8, 9. Having thoroughly evaluated the record evidence and for all the reasons discussed above, on this record, the Court finds that this remedy is appropriate to redress the alleged unfair labor practices for which the Board has offered supportive evidence, and it is reasonably necessary to return the parties to the status quo. *Kobell*, 965 F.2d at 1410; *see also Hooks ex rel. N.L.R.B. v. Ozburn-Hessey Logistics, LLC*, 775 F. Supp. 2d 1029, 1051 (W.D. Tenn. 2011) ("In light of Petitioner's evidence suggesting pervasive unlawful employment practices, granting an injunction is in the public interest to effectuate the policies of the NLRA and . . . is necessary to return the parties to status quo pending the NLRB's proceedings in order to protect the NLRB's remedial powers under the NLRA."). Moreover, this remedy, which recognizes that

---

[2] To be clear, as the Sixth Circuit made plain in its remand order, "[t]hat courts of appeals enforce Board-issued 'pick and choose' orders in appropriate circumstances does not mean that this remedy is required as a matter of course, particularly in a preliminary § 10(j) proceeding" since, "[a]t this stage, the Regional Director has made no definitive showing of ADT's liability." [R. 36 (Sixth Circuit Opinion and Judgment), p. 16]. The Court simply observes that the First Circuit's rationale, as quoted, is persuasive on this issue.

favorable changes shall remain in effect, should assuage ADT's stated concern that the Union will benefit at bargaining unit employees' expense.[3]

As a closing note, ADT suggests that the Board's delay in initiating these proceedings indicates that injunctive relief is not necessary. [R. 43, pp. 3–4]. The Court is wholly unconvinced by this argument. *See Paulsen v. Renaissance Equity Holdings, LLC*, 849 F. Supp. 2d 335, 361 (E.D.N.Y. 2012) ("Courts generally find that the Regional Director's delay in commencing a § 10(j) action does not undermine the case for injunctive relief. . . . The fourteen-month delay in this case appears to be typical in § 10(j) proceedings, and courts have granted § 10(j) injunctions despite even longer delays. . . . Petitioner's delay has not rendered injunctive relief inappropriate or ineffective in this case[.] . . . In any event, none of the factors that justify injunctive relief under the "just and proper" prong are diminished by petitioner's delay.") (counting cases). Here, as ADT acknowledges, the Board filed its Section 10(j) petition [R. 1] on June 9, 2022, approximately seven months after ADT implemented its unilateral changes. [R. 43, p. 3]. This period of delay, as the *Renaissance Equity* court acknowledged, is not unreasonable, and has not rendered injunctive relief unnecessary.

Furthermore, ADT raises this issue for the first time in its supplemental brief, and it made no mention of the apparent futility of injunctive relief when opposing the Board's Section 10(j) petition initially. The Court finds no merit in this last-ditch effort to oppose the Board's requested relief. *See Overstreet*, 668 F. Supp. 2d at 1009–10 ("'The Board needs time to do a thorough investigation before it even requests the injunction. To require the Board to sacrifice thorough evaluation for speed would dissipate the Board's expertise, and dilute the statutory deference

---

[3] Again, the Court emphasizes that its finding that a "pick and choose" rescission order is appropriate here is based on the specific facts, evidence, and posture of this case, and is not to be interpreted as opining that such discretion is appropriate in every case as "a matter of right." [R. 36 (Opinion and Judgment), p. 16].

principle.'") (citation omitted). Because both the Sixth Circuit Court of Appeals and the ALJ overseeing this matter determined there is significant evidence to indicate ADT violated the Act when it unilaterally changed the terms and conditions of the bargaining unit members' employment, and for all the foregoing reasons, this Court finds it just and proper to order ADT to, at the Union's discretion, rescind any or all of those unilateral changes.

## III.    Conclusion

For the reasons discussed above and in the Court's October 31, 2022 Memorandum Opinion and Order [R. 15], **IT IS HEREBY ORDERED** as follows:

a.    Defendant ADT, LLC is **HEREBY ENJOINED** and **RESTRAINED** from engaging in the anti-union practices that gave rise to the Board's petition, including:

> i.    Refusing to recognize and bargain in good faith with the International Brotherhood of Electrical Workers, Local Union No. 369, AFL-CIO.
>
> ii.    Promising unit employees increased wages, better benefits, and improved terms and conditions of employment if they decertified the Union.
>
> iii.    Soliciting unit employees to decertify the union.
>
> iv.    Soliciting and assisting in the circulation of a disaffection petition among unit employees.
>
> v.    Bypassing the union as the exclusive collective bargaining representative of unit employees and dealing directly with them regarding their wages and other terms and conditions of employment.
>
> vi.    Making changes to the terms and conditions of employment of the unit employees without giving prior notice to the union and bargaining with the

union until either a collective bargaining agreement or a good faith overall

impasse is reached.

      b.     Defendant ADT, LLC **SHALL** re-recognize the Union as its employees'

bargaining representative.

      c.     Defendant ADT, LLC **SHALL** rescind, at the Union's request, any or all unilateral

changes made to the terms and conditions of bargaining unit members' employment.

      d.     All other injunctive relief granted in the Court's October 31, 2022 Memorandum

Opinion and Order [**R. 15**] **SHALL** remain in effect.

      This the 25th day of April, 2024.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

cc:  Counsel of Record

- 32 -